UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-00824-H

LORI HAYDEN                                                                PLAINTIFF

V.

FIFTH THIRD BANK, INC.                                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Lori Hayden, has filed a class action complaint against her former employer, Defendant, Fifth Third Bank, Inc. ("Fifth Third").[1]  Plaintiff asserts two counts arising from the company's fee charge-back policy: 1) that Fifth Third's policy violated her rights, and the rights of those similarly situated, under the Truth in Lending Act, Title I of the Consumer Credit Protection Act, Pub. L. 90-321, 82 Stat. 146 ("TILA"), and its corresponding regulations at 12 C.F.R. §226.1, *et seq.* ("Regulation Z"); and 2) that Fifth Third breached its contract with Plaintiff, and those similarly situated, in implementing the policy.[2]

Fifth Third moves to dismiss the complaint in part for two reasons.  First, it says that Plaintiff, and the putative class members, have no standing to assert the TILA claim.  Second, it says that the contractual limitations period governing claims arising out of Plaintiff's employment with

---

[1] Plaintiff defines the class as "[a]ll persons in the United States who are or were employed by Fifth Third Bank or any of its subsidiaries as a mortgage loan originator who had application fee charges deducted from their commissions for the past 15 years."  ECF No. 1.

[2] Plaintiff asserts in her complaint that Fifth Third also breached its contract in refusing to pay earned commissions upon cessation of employment.  While Plaintiff included this accusation within her breach of contract claim, the Court is unsure whether Plaintiff's claim for unpaid commissions upon termination extends from the fee charge-back policy or some other contractual provision.  Neither party appears to discuss the nature of this claim in their briefs, so the Court will not address it in this Opinion.  Nevertheless, any issues regarding the timeliness of the claims brought against Fifth Third as to unpaid commissions are inapposite, because Plaintiff filed suit within six months of her termination in accordance with the relevant contractual limitation of actions period for claims arising from termination of employment.  *See supra* Part V.

Fifth Third bars claims against Fifth Third for events occurring more than six months before Plaintiff filed this suit.  For the following reasons, the Court will sustain Fifth Third's motion in part and deny the motion in part.

I.

According to Federal Rule of Civil Procedure 12(b)(6), courts will dismiss complaints "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Garcia v. City of Oakwood*, 99 F.3d 1138, *2 (6th Cir. 1996) (table opinion) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Therefore, to overcome a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The Court must view the allegations in a light most favorable to the nonmoving party, treating all well-pleaded facts as true, but the Court need not accept bare conclusions.  *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

Rule 12 provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(d).  "Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings.  This occurs when a document is referred to in the complaint and is central to the plaintiff's claim."  *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (internal citations omitted).  In *Greenberg*, the Sixth Circuit did not consider the plaintiffs' insurance policies "matters outside the pleadings", because they were referenced in the complaint and central to the

2

plaintiff's claims relating to those policies.  *Id.*  Similarly, Fifth Third's employee incentive compensation plan (the "Plan") and Mortgage Loan Pricing Agreement and Prepayment of Settlement Costs Policy (the "Policy") are referenced in the complaint and central to Plaintiff's claims.[3]  The Court will consider these documents when determining whether the motion to dismiss should be granted.

## II.

The Court construes the facts in the light most favorable to Plaintiff.  Fifth Third employed Plaintiff as a mortgage loan originator ("MLO").  MLOs solicit mortgage loan applications for loans that Fifth Third will finance.  The loan solicitation process works as follows: Fifth Third first generates contact information for potential mortgage loan customers and provides that information to the MLOs.  The MLOs then contact the potential customers and obtain their financial information to determine their eligibility for a mortgage loan financed by Fifth Third.  The MLOs will discuss possible loan options with these potential customers.  If and when the potential customer selects a product, the MLOs compile relevant loan documents and forward them to an underwriter or loan processor.

The Plan, a contract between the MLOs and Fifth Third, in large part defines the employment relationship at issue.  The Plan includes the following fee charge-back policy:

> It is the responsibility of the Employee to collect any fees required for that product, but not limited to [sic], the Processing, Underwriting, and/or Application fees.  The Application fee may not be collected in pricing or yield.

> Uncollected application fees will be charged back to the MLO for non-originated applications (e.g. denied, withdrawn, etc.).

---

[3]  Plaintiff incorrectly states in her complaint that these two documents are attached as exhibits to the complaint. Rather, those documents are attached to Fifth Third's motion to dismiss, ECF No. 14, and Plaintiff's response to that motion, ECF No. 15.

ECF No. 14-2.  In other words, where MLOs are unable to collect an application fee from a potential customer, Fifth Third would charge the MLOs that fee if Fifth Third denied or withdrew the loan. The pertinent fee for this case is the $350 loan application fee.  Plaintiff emphasizes that the language in the Plan only obligates MLOs to collect application fees *required* for the product, and construes the provision to require only those application fees accruing lawfully.

Also relevant here, Fifth Third required MLOs to bind prospective borrowers to the Policy, which provided pricing options concerning the borrowers' loan application.  One such option provided borrowers the choice of checking "yes" or "no" to the following provision:

> I/we acknowledge that we are applying for a pre-approval and that a fee is due upon the borrower receipt of the initial Truth in Lending Disclosure (TIL).  The fee will be **non-refundable** if I do not close on a loan with Fifth Third Mortgage Company.  If I close on a loan then the fee will be credited towards my total costs due at closing.  I further acknowledge that the rate and points cannot be locked until I/we provide Fifth Third Mortgage Company with an accepted purchase contract on a one to four family property.

ECF No. 14-1.  Even if the borrower checked "no," Fifth Third's standard policy was to process the application regardless.  If Fifth Third then denied the application or withdrew the loan, it would charge the MLOs the application fee.

Plaintiff argues that in such a scenario, the fees collected from the charge-back policy were unlawful for failing to comply with all the TILA requirements before charging an application fee. Plaintiff posits in her response that the TILA imposes upon Fifth Third a requirement that the borrower receive good faith estimate disclosures as to the amount and interest rate of the loan before charging an application fee, and Fifth Third circumvents this requirement by charging its MLOs for those fees before disclosing this information to consumers.  In this manner, Plaintiff claims that Fifth Third violated the TILA's disclosure requirements.  Plaintiff further contends that Fifth Third

breached the Plan by charging her application fees that were not required because they accrued unlawfully. Fifth Third requests that the Court dismiss the TILA claim in its entirety and the breach of contract claim to the extent that any of the breaches occurred more than six months before Plaintiff filed suit.[4] The Court will address the two claims and corresponding arguments separately.

III.

To bring a claim in federal court, the plaintiff must have both constitutional and prudential standing. To have constitutional standing, the plaintiff must have "suffered (1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Prudential standing, which "is a judicially created doctrine relied on as a tool of judicial self-governance," precludes litigation where: (1) "the asserted harm is a 'generalized grievance'"; (2) "the plaintiff [] purports to rest his claim to relief on the legal rights or interests of third parties"; and (3) "the plaintiff's complaint fall[s outside] the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* (internal citations omitted). Although the specific argument is unclear, Fifth Third seems to contend that Plaintiff lacks prudential standing as to the TILA claim, because Plaintiff is not within the zone of interests that the TILA protects.[5]

---

[4] Accordingly, Fifth Third has not moved to dismiss the complaint as to the claims alleging unlawful activity occurring between July 10, 2012 and December 10, 2012, the date Plaintiff filed suit.

[5] Fifth Third may also be arguing that Plaintiff attempts to assert the rights of the consumers in this action, in violation of the prudential standing prohibition against litigants raising another party's rights. *See Allen v. Wright*, 468 U.S. 737, 751 (1984). Plaintiff, in response, seems to argue that she has a close enough relationship to the consumers to entitle her to sue on their behalf, which is an exception to this particular prudential standing prohibition. *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). The Court disagrees with Plaintiff's argument for three reasons. First, although the Supreme Court has recognized a close relationship between vendors and their customers, *see Craig v. Boren*, 429 U.S. 190, 192-97 (1976), the Court doubts that this situation is similar enough to the *Craig* case to produce a "close relationship" sufficient to fall within the exception. Second, the third parties must have standing to create standing for the litigant. *See AT&T Corp. v. Rudolph*, 2007 WL 647564, *7 (E.D. Ky.

Imposing disclosure requirements on certain creditors like Fifth Third, the TILA "was specifically designed to remedy problems that had developed from the rapidly expanding use of consumer credit in the 1960s." *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 799-800 (6th Cir. 1996).  Congress included in the TILA "'private attorney general' enforcement provisions and statutory damage provisions which gives persons protected under the Act standing to sue for damages." *Villareal v. Snow*, 1996 WL 28254, *2 (N.D. Ill. Jan. 19, 1996).[6]

The private right of action provision in the TILA reads as follows, "Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person . . . ." 15 U.S.C. § 1640(a).  Plaintiff argues that this broad provision includes any person damaged by virtue of a TILA violation.

Section 1640(a) thus grants a private right of action to those protected under the TILA, and the only persons protected by the TILA's disclosure requirements are consumers. *See, e.g.*, Regulation Z, 12 C.F.R. § 226.1(c)(1) ("In general, this regulation applies to each individual or business that offers or extends credit when four conditions are met: (I) The credit is offered or extended to consumers . . . .").  The term "consumer" is defined in the TILA "with reference to a credit transaction." 15 U.S.C. § 1602(i).  Plaintiff and those similarly situated are not consumers. They did not engage in a credit transaction with Fifth Third, and therefore, the TILA's disclosure requirements do not protect them.  Based on a plain reading of the statutory language, the Court

---

2007).  The consumers here suffer no injury under the TILA, because Fifth Third collected no fees from them. Plaintiff has not alleged otherwise. Therefore, the consumers likely have no standing to bring this suit because they did not suffer an injury as required for constitutional standing.  Finally, a litigant can only obtain third-party standing when the third parties are hindered from asserting their interests in their own rights. *See Kowalski*, 543 U.S. at 130. Plaintiff alleges no such hindrance here.  Accordingly, Plaintiff does not obtain standing by suing on behalf of the consumers.

[6]  Because the Supreme Court and the Sixth Circuit offer little guidance as to who has standing under the TILA, the Court will consult the decisions of other circuit and district courts to analyze this narrow issue.

concludes that because the TILA's disclosure provisions and corresponding regulations provide a private right of action only to consumers and only intends to protect consumers, employees of the creditor lack standing to sue the creditor in their capacities as employees.

All other courts that have considered the issue seem to agree with this analysis. *See Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868, 874 (11th Cir. 2010) (holding that "[t]he TILA provides a civil cause of action by a *consumer* against a creditor who fails to make the required disclosures," and insomuch as "Johnson was not a debtor or 'consumer' of the loan," she "failed to meet the prudential requirements for standing, because she failed to show that her complaint was within the 'zone of interests' protected by the statutes she cited" (internal citations omitted)); *Correa v. BAC Home Loans Servicing LP*, 853 F. Supp. 2d 1203, 1208 (M.D. Fla. 2012) (holding that "[a] nonparty to the loan cannot bring an action for violations of TILA," such that a plaintiff who merely financed a second plaintiff's mortgage did not have standing to sue the creditor under the TILA, while the second plaintiff, as the actual consumer, did have standing); *Sirote v. BBVA Compass Bank*, 857 F. Supp. 2d 1213, 1218 (N.D. Ala. 2010) (holding that the TILA "provides a civil cause of action *by a consumer against a creditor* who fails to make the required disclosures" (internal citation omitted)); *Walker v. Michael W. Colton Trust*, 33 F. Supp. 2d 585, 589 (E.D. Mich. 1999) (citing the TILA definition of consumer to support the holding that the plaintiff, who merely gifted money to another to finance a loan, did not have standing to sue under the TILA); *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 692 (E.D. Pa. 1973) ("[T]he Truth-in-Lending Act makes explicit that only a person to whom the duty of disclosure is owed can recover for breach of that duty.  It is obvious that in order for a bank to be obligated to disclose credit terms to an individual, that individual must be doing business with the bank."); *Talley v. Deutsche Bank Trust Co.*, 2008

7

WL 4606302, *2 (D.N.J. Oct. 15, 2008) (determining that because "the TILA requires creditors to provide borrowers with certain disclosures regarding things like finance charges, percentage rates of interest and borrower's rights," the TILA explicitly only gives standing to borrowers).

Plaintiff fails to cite any cases where a non-borrower has standing to sue under the TILA. Accordingly, the Court must dismiss Plaintiff's TILA claim.

IV.

Plaintiff's breach of contract claim extends from the Plan, which also includes a limitation of actions provision that states,

> Employee agrees not to commence any action or suit related to Employee's employment by Fifth Third:
> 1. More than six months after the termination of Employee's employment, if the action or suit is related to the termination of Employee's employment, or
> 2. More than six months after the event or occurrence on which Employee's claim is based, if the action or suit is based on an event or occurrence other than the termination of Employee's employment.

ECF No. 14-2. Fifth Third argues that this provision bars any claims arising more than six months before Plaintiff filed this case. Plaintiff disagrees on a number of grounds. To analyze this issue, the Court will apply Ohio law pursuant to the Plan's choice of law provision.[7]

A.

First, Plaintiff argues that this Court should construe the Plan's limitations provision strictly against Fifth Third, because it is a provision of adhesion which Ohio courts typically disfavor. While the construction of written contracts is a matter of law, if the contract is clear and unambiguous, the court will read the contract according to its ordinary meaning. *Latina v. Woodpath Dev. Co.*, 567

---

[7] Neither party seems to contest the applicability of Ohio law to this contract. However, having reviewed Plaintiff's breach of contract under Kentucky law, the Court would likely reach the same conclusions as reached here, because the contractual legal issues presented are largely the same as between the two states' common law.

N.E.2d 262, 264 (Ohio 1991).  As it happens, the Court need not delve into the parties' interpretation of the provision, because the limitations  provision is unambiguous on its face.

Second, Plaintiff states that the limitations provision is neither valid nor enforceable. Unfortunately for Plaintiff,  Ohio courts, and a federal court construing Ohio law, have found other six-month contractual limitation of actions provisions valid and enforceable.  *See Williamson v. W. & S. Life Ins. Co.*, 2008 WL 4726498, *4 (Ohio Ct. App. Oct. 28, 2008); *Hoskins v. DaimlerChrysler Corp.*, 2005 WL 5588084, *4 (S.D. Ohio Mar. 30, 2005); *McKay v. Fifth Third Bank*, No. A-09-08300 (Ohio Ct. Common Pleas July 7, 2010) (construing identical contractual language).  However, this does not end the inquiry.  The Court must also analyze the provision within its specific context.

The Ohio Supreme Court determined that "contractual limitations which narrow the time for filing an action to a period less than set forth in the general statute of limitations are valid if reasonable." *Colvin v. Globe Am. Cas. Co.*, 432 N.E.2d 167, 169 (Ohio 1982), *overruled on other grounds by Miller v. Progressive Cas. Ins. Co.*, 635 N.E.2d 317, 321 (Ohio 1994).  The Court must therefore also determine the contextual reasonableness of the provision to find the provision valid and enforceable.  For example, in *Universal Windows & Doors, Inc. v. Eagle Window & Door, Inc.*, 689 N.E.2d 56, 59 (Ohio Ct. App. 1996), the court concluded that the one-year limitation of actions provision was reasonable, because 1) the provision was clear in the contract, 2) the plaintiff knew of any breaches when they occurred, as evidenced in the plaintiff's complaints about the defendant's conduct, and 3) the one-year period provided ample time for settlement negotiations.  *Id.*  The Court here cannot engage in such an inquiry without a more developed record.   Accordingly, the Court is not in the position to rule on the reasonableness of Fifth Third's limitation of actions provision

in the context *sub judice.*  This reason alone is a sufficient basis to deny Fifth Third's motion at this time.

Third, Plaintiff suggests that allowing such a provision to bar her claims is against public policy, and therefore the Court should void the provision.  While the Court finds the six-month contractual limitations provision constrictive, according to the numerous Ohio opinions cited above upholding and enforcing similar provisions, it is not against public policy.

B.

Finally, Plaintiff argues that the doctrine of continuous violation serves to toll the limitations period in this case.  Under this doctrine, "[w]here new harm occurs on a continuing basis due to continuing course of conduct, the statute of limitations begins anew each day of the harm."  *Ohio Edison Co. v. Wilkes*, 2012 WL 2308127, *8 (Ohio Ct. App. June 13, 2012).  The concept of a continuing violation, easily stated in theory, becomes more difficult to apply in a specific context.

Citing *Hensley v. City of Columbus*, 557 F.3d 693 (6th Cir. 2009), the seminal Sixth Circuit case on the subject, the Ohio Supreme Court permits the application of the continuous violation doctrine.  *State* ex rel. *Nickoli v. Erie MetroParks*, 923 N.E.2d 588, 594 (Ohio 2010).  In *Hensley*, the Sixth Circuit outlined the three requirements for establishing a continuing violation: "(1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendant at any time ceased their wrongful conduct, further injury would have been avoided."  557 F.3d at 697.  "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation."  *Eerie MetroParks,* 923 N.E. 2d at 594 (quoting

10

*Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009)).[8]  Therefore, where the injury extends from

one unlawful activity, the continuous violation doctrine cannot apply.  *Id.*  However, where for

example, a particular law or policy inflicts an ongoing violation of a party's rights, the limitation of

actions period should not prohibit that party from seeking legal redress for injuries caused therefrom

simply because he or she did not act quickly enough the first time that law or policy affected them.

*See Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 521 (6th Cir. 1997).

Courts most frequently apply the continuing violation doctrine in the employment context

"where (1) a longstanding and demonstrable policy of discrimination exists, or (2) some evidence

of present discriminatory activity giving rise to a claim of a continuing violation exists."  *Ohio Civil*

*Rights Comm'n v. Triangle Real Estate Servs., Inc.*, 2007 WL 1125842, *5 (Ohio Ct. App. Apr. 17,

2007).  Plaintiff's case seems to fall into the former category, because the overarching fee charge-

back policy is both longstanding and demonstrable.  The policy may be wrongful and may have

caused an injury to Plaintiff that accrued continuously as Fifth Third charged back each application

fee.  Had Fifth Third ceased implementing the policy, further injury to Plaintiff would likely have

been avoided.

Therefore, a thorough review of relevant Ohio case law and the cases from other courts with

---

[8]  In *Painesville Mini Storage, Inc. v. Painesville*, 2009 WL 2217553 (Ohio Ct. App. July 24, 2009), the Ohio Court
of Appeals illustrated this subtle difference.  In that case, the city conveyed a street tract to J.B.H. Properties in a
quitclaim deed that relinquished all existing rights to use the roadway, including a public thoroughfare easement that
existed over the tract for 80 years.  The city then issued a building permit to J.B.H. Properties to expand their
existing building and install a fence in such a way as to prevent future use of the easement for public access.  The
plaintiff filed a state court case for a writ of mandamus that essentially asserted a takings claim against the city.  The
Court found that the taking was not a continuous violation, because "the extent of the damages stemming from the
alleged taking, i.e., the decrease in the value of its real property interest, was complete as soon as the roadway on the
tract was no longer accessible." *Id.* at *7.  On the other hand, the Court surmised that if the case involved "a situation
in which the city issued a series of permits over a sustained period of time" or "an instance in which new
construction on the 'street' tract occurred periodically through the years as a result of separate acts by the city", the
continuing violation doctrine may be applicable.  *Id.*  In the present case, Fifth Third's charge-back policy is more
akin to the issuance of a series of permits than a situation where the injury was complete once the unlawful act
occurred, making the application of the continuous violation doctrine is more appropriate.

11

similar conceptions of the continuous violation doctrine persuades the Court that Plaintiff has satisfied her burden at this stage that a plausible set of facts supports the conclusion that Fifth Third's conduct could constitute a continuous violation.

The Court is mindful that, as the Ohio Supreme Court noted, courts are reluctant to apply the doctrine outside the civil rights context. *Erie MetroParks*, 923 N.E.2d at 594; *see Vitek v. AIG Life Brokerage*, 2008 WL 4372670, *5 (S.D. Ohio Sept. 22, 2008) (pointing out that the plaintiff cited no Ohio cases wherein the court applied continuing violation doctrine to a breach of contract claim); *Press v. Howard Univ.*, 540 A.2d 733, 735 (D.C. Cir. 1988)(explaining that breaches of contract are typically a single injury). At the same time, this Court finds that "[n]o opinion has articulated a principled reason why the continuing-violation doctrine should be limited to claims for deprivations of civil rights and employment discrimination." *Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 480 F.3d 410, 416-17 (6th Cir. 2007); *cf.*, *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc.*, 292 F.3d 471, 481-82 (5th Cir. 2002) (applying the continuous violations doctrine to injuries arising from breaches of a lease agreement). In fact, one Ohio court recognized that the continuous violation doctrine may apply to deprivations of other legal or contractual rights, without discussing in depth an explicit breach of contract application. *See Wilkes*, 2012 WL 2308127, at *8.

Moreover, though Plaintiff's claim is for breach of contract, the crux of Plaintiff's actual assertion here is that the contract contains an unlawful provision. Therefore, Fifth Third is not accused of breaching a specific contractual provision, but rather of enforcing an unlawful one. Consequently this claim, however denominated, lends itself to the continuing violation analysis. Unless other unexpected facts come forth, the Court is confident that the continuing violation

analysis fits our circumstances.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Fifth Third's Motion to Dismiss as to Plaintiff's Truth In Lending Act violation claims is SUSTAINED, and Count I of Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Fifth Third's Motion to Dismiss as to Plaintiff's breach of contract claim is DENIED.

cc:     Counsel of Record