UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-824-H

LORI HAYDEN                                                                                    PLAINTIFF

V.

FIFTH THIRD BANK, INC.                                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Lori Hayden, a former Mortgage Loan Originator ("MLO") for Defendant, Fifth Third Bank ("Fifth Third"), makes two claims: (1) that Fifth Third breached her payment contract by deducting uncollected residential mortgage loan application fees as "charge-backs" from her commissions; and (2) that Fifth Third enforced an unlawful contractual provision by withholding earned commissions upon cessation of her employment. Hayden seeks to certify a class of current and former MLOs aggrieved by the same practices. Defendant has moved for summary judgment. Both matters are fully briefed. Because the Court finds that Fifth Third is entitled to summary judgment, Hayden's motion for class certification is moot.

I.

Hayden worked for Fifth Third as an MLO in Louisville, Kentucky from March 14, 2011 until she voluntarily resigned on September 28, 2012. Fifth Third pays MLOs on a commission basis. The terms controlling when and how commissions are calculated and paid are outlined in an Incentive Compensation Plan ("ICP"), which Fifth Third updates yearly and sometimes more. Hayden's charge-back claim implicates both the 2011 and 2012 ICP as Fifth Third charged uncollected fees to Hayden in each of those years. The 2012 ICP governs whether Hayden was owed earned commissions upon the cessation of her employment in 2012. Both applicable ICPs

include a section requiring employment claims to be brought within six months after termination or the precipitating event or occurrence. Both ICPs also include an Ohio choice of law provision whose applicability Hayden does not dispute.

One of Hayden's duties was to collect an application fee from prospective customers who filled out a loan application.[1] Multiple system checks ensure that such collection does not occur prior to customers' receipt of required Truth-in-Lending Act disclosures. The application fee[2] pays for costs Fifth Third incurs no matter whether the customer is ultimately approved for a loan or not, such as appraisal costs and costs of obtaining potential customers' credit reports. The prudent practice for an MLO is to collect the application fee early in the process. If not, the MLO risks having the fee charged back to them in the event the customer withdraws their application, Fifth Third ultimately declines the loan, or the loan is approved but not accepted by the customer.[3] If the MLO does not collect the required fee but Fifth Third ultimately approves the loan (and the borrower accepts it), the fee becomes part of the total settlement costs and the MLO is not assessed a charge-back.[4]

Hayden incurred nine separate charge-backs of $350.00 in 2011-2012.[5] Four of these occurred in 2011, five in 2012. Hayden does not specify the amount of commissions she alleges Fifth Third withheld after she resigned.

---

[1] The 2011 ICP reads, "It is the responsibility of the Employee to collect any fees required for that product including, but not limited to, the Processing, Underwriting, and Application Fees. The Application Fee may not be collected in pricing or yield." DN 29, § III.H.
    The 2012 ICP reads, "It is the responsibility of the Employee to collect any fees required for that product [*sic*], but not limited to, the Processing, Underwriting, and Application Fees. The Application Fee may not be collected in pricing or yield. Uncollected application fees will be charged back to the MLO for non-originated applications (e.g., denied, withdrawn, etc.)." DN 29-1, § III.H.
[2] This fee is also referred to as the "loan processing fee" in the Mortgage Loan Pricing Agreement and Prepayment of Settlement Costs Policy ("MLPA") that was in effect during Hayden's employment. *See* DN 14-1, p. 2.
[3] Even where a charge-back is assessed, the MLO has the ability to seek a waiver of the charge from their Affiliate Sales Manager. *See* DN 25, p. 11-12.
[4] *See* MLPA, DN 14-1, p. 2. Customers who do not prepay the fee risk losing a locked-in interest rate.
[5] Two other charge-backs were deducted but later reimbursed and four others were waived at Hayden's request.

Hayden filed a class action complaint in federal court on December 10, 2012. Along with the contract claims described above, Hayden asserted claims under the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.* Upon Defendant's motion, the Court dismissed Hayden's TILA claim for lack of standing on May 21, 2013. DN 17. The Court also considered whether Hayden's charge-back claim was contractually time-barred.[6] Reserving the question of whether Fifth Third's sixth-month limitation on employment actions was reasonable under the circumstances, the Court found the continuous violation doctrine seemingly fit the circumstances, thus tolling any statute of limitations: "[T]hough Plaintiff's claim is for breach of contract, the crux of Plaintiff's actual assertion here is that the contract contains an unlawful provision. Therefore, Fifth Third is not accused of breaching a specific contractual provision, but rather of enforcing an unlawful one." *Id.* at 12.

The record has developed significantly since that date and the case is now ripe for review.

II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must come forward with significant probative evidence to support her claim—the nonmovant may not rest on the pleadings. *Id.* at 324. To survive summary judgment, the nonmoving party "must set forth specific facts showing there is a genuine issue for trial." FED. R. CIV. P. 56(e).

---

[6] Because Hayden filed suit within six months of her termination, the contract claim related to withheld commissions is not time-barred.

III.

The record makes clear that Hayden does not allege Fifth Third's charge-back policy is unlawful as a whole, only that the policy is unlawful when applied in a few factual circumstances. Indeed, Hayden does not cite, and the Court is unable to locate, any law prohibiting the general practice of deducting from an employee's commission fees that the employee was required—but failed—to collect. For this reason, the continuing violation doctrine does not apply. Nevertheless, certain charge-backs were assessed against Hayden's commissions within six months of her complaint, so the Court will discuss the merits of this claim.

The ICP language provides "[i]t is the responsibility of the Employee to collect any fees required for that product. . . ." DN 29 (2011 ICP) and 29-1 (2012 ICP), at § III.H. Plaintiff argues Fifth Third breached this provision because the charge-backs it assessed were not fees "required for that product" in two senses: (1) a fee unlawfully accrued prior to providing the potential borrower the required TILA disclosures cannot be considered a "required" fee; and (2) Fifth Third's standard policy was to process an application regardless of whether the customer checked "No" indicating they did not agree to pay the non-refundable fee for pre-approval, and in such cases, the application fee is not "required for that product."

Plaintiff's first theory fails for several reasons. First, to the extent Hayden's claim seeks to vindicate any unlawful accrual of the fee, employee MLOs have no standing to assert such a claim. The Court addressed this issue at length in the Order dismissing Hayden's TILA claim. DN 17, p. 4-8. Second, the record reflects that Fifth Third never actually assessed a charge-back to Hayden before issuing customers the required disclosures. *See* DN 25, p. 13-14. Plaintiffs may only vindicate injuries in fact. Because Fifth Third never charged an uncollected fee to

Hayden prior to issuing required disclosures to potential borrowers, and because Hayden could not vindicate any unlawful accrual of the fee even if those were the facts, this theory of breach fails.

Next, Plaintiff argues that a customer's checking "No" next to the paragraph on the part of the Mortgage Loan Pricing Agreement and Prepayment of Settlement Costs Policy ("MLPA") form where customers can apply for pre-approval means that an application fee is not "required for that product." This is factually inaccurate. That a fee is not ultimately required *of* certain customers (in the event their loan does not close) does not mean a fee is not required *for* the loan product, or, more specifically, for processing the loan application. MLOs go over the MLPA with customers as part of every loan application. Customers are not required to apply for pre-approval, but every customer has the option of checking "Yes" or "No" next to a pre-approval paragraph:

> I/We acknowledge that we are applying for a pre-approval and that a fee is due upon upon [*sic*] borrower receipt of the initial Truth In Lending Disclosure (TIL). This fee will be **non-refundable** if I do not close on a loan with Fifth Third []. If I close on a loan then the fee will be credited towards my total costs due at closing.

DN 14-1, p. 2. The very next paragraph makes customers aware that an application or loan processing fee is due on *every* home mortgage loan application:

> When applying for a Residential Mortgage Loan, or Pre-Approval for a Residential Mortgage Loan, a loan processing fee is due. This loan processing fee does not represent pre-payment of specific closing costs. It does, however, represent a pre-payment of a portion of the total settlement costs. Assuming your loan application is approved, this prepayment of settlement costs will be credited towards your total costs due at closing your transaction. If your application is not approved, is withdrawn, or is approved and does not close, you **will not** be entitled to a refund of the application or pre-approval fee paid.

5

*Id.*[7] Thus, checking "No" next to the pre-approval paragraph does not mean that a customer does not owe an application fee.[8]

The latter provision's language focuses on prepayment, but does not suggest that costs will not be incurred unless and until prepayment is received, or that Fifth Third will waive the fee if prepayment is not received. Instead, the plain language contemplates that any unpaid, required fees roll over into total settlement costs, and customers who choose not to prepay the fee do so at the risk of losing a preferential interest rate. Customers acknowledge this when they sign the required MLPA form.

MLOs are contractually required to ensure customers understand the MLPA and pay the required fees. MLOs incur a charge-back only if they fail to collect the required fee prior to the occurrence of one of the non-origination contingencies: the applicant withdraws their application, Fifth Third denies the loan, or the applicant rejects the approved loan.

While some might think this charge-back policy unfair, the assessment of charge-backs to Hayden under these circumstances is not a breach of either applicable ICP or any general law.[9] Fifth Third is entitled to summary judgment on Hayden's charge-back claim.

IV.

Hayden has not substantiated her claim that she was not paid earned commissions upon cessation of her employment. The Court noted this in its previous ruling and yet the factual basis

---

[7] Fifth Third appears to use the terms "application fee," "loan processing fee," and "pre-approval fee" interchangeably in the MLPA.

[8] Or, for that matter, that the customer even intends to indicate their refusal to pay the fee. The "No," on a more basic and less abstract level, simply signifies "I am not applying for pre-approval."

[9] Unlike the 2012 ICP (and the ICPs from 2003-2010), the 2011 ICP did not provide that uncollected fees would be charged back. Plaintiff does not make the argument, but absent authorizing language in the compensation plan, Fifth Third could be liable for the 2011 charge-backs under a conversion theory. However, any grievance related to those individual charge-backs is time-barred by the contract. The Court finds six months reasonable under the circumstances, as Ohio law requires, especially in light of the fact that Plaintiff knew of and admits to complaining internally about the charge-backs, and apparently requested (successfully) that her Affiliate Sales Manager waive one charge in 2011. *See* DN 25, p.13.

for the claim remains unclear. *See* DN 17, n.2. Under the 2012 ICP, employees were not entitled to incentive payments unless both (1) "[t]he loan is disbursed and in stage 51 or greater in Unifi, excluding stages 59, 80 and 90" <u>and</u> (2) "[t]he employee is employed with Fifth Third on the Loan's Disbursement Date." Defendant's records show that it paid Hayden all commissions she was entitled under these terms. Hayden does not rebut this fact. Instead, she merely argues for more time to depose Fifth Third's representatives "regarding interpretation and application of the compensation plan at issue." DN 33, p.6. However, interpretation of a contract is a question of law for the Court to decide. *Schreck Mech. Corp. v. Borden, Inc.*, 186 F.Supp.2d 724, 729-30 (W.D. Ky. 2001). The contract's provisions governing entitlement to compensation are clear on their face and, more importantly, are lawful. Further, given that Hayden chose her resignation date, her qualm with the ICP's application is not well taken. Ultimately, the dearth of evidence to support Hayden's claim entitles Fifth Third to summary judgment on this claim as well.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (DN 26) is SUSTAINED and Plaintiff's claims are dismissed with prejudice.

IT IS FURTHER ORDERED that Plaintiff's Motion to Certify Class (DN 20) is DENIED as moot, as are all remaining pending motions (DN 34, DN 38, DN 42, DN 43).

This is a final order.

cc: Counsel of Record